UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ARTHUR MORRELL, ET AL.** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 10-924** |
| **SEAN ALFORTISH, ET AL.** | **SECTION "L" (4)** |

## ORDER & REASONS

The Court has before it Motions to Dismiss filed by all named Defendants in this action. (Rec. Docs. 52, 54, 61, 71, 74, 82). Plaintiffs filed a joint opposition, and various Defendants have filed reply briefs. The Court has reviewed these materials, the pleadings, and the applicable law. For the reasons set forth herein all Motions to Dismiss are GRANTED.

### I. BACKGROUND

This case arises out of an alleged RICO enterprise operated by executives and board members of the Louisiana Horsemen's Benevolent & Protective Association 1993, Inc. ("LHBPA"). The LHBPA is a non-profit corporation empowered to represent the interests of race horse owners and trainers in dealings with racing tracks, the Louisiana State Racing Commission, and the Louisiana Legislature. The LHBPA acts as a collective bargaining agent for horse owners and trainers, handles purse monies, and provides health benefits, pensions, and workers compensation insurance to horse trainers.

Plaintiffs are Arthur Morrell, a horse owner and former member of the Board of Directors of the LHBPA, and Carl Woodley, a horse trainer. Defendants are Sean Alfortish, President of the LHBPA; Mona Romero, Executive Director of the LHBPA; Larry Robideaux, Jr., First Vice-

1

President and a board member of the LHBPA; Carroll J. Castille, Second Vice President and a board member of the LHBPA; and Evelyn Benoit, Christine Early, William R. Foreman, Don Hargroder, Keith Bourgeois, Sam B. David, and Gerald Romero, board members of the LHBPA.[1]

Plaintiffs' claims arise out of four general areas of alleged wrongful conduct. First, Plaintiff Morrell alleges that while a member of the LHBPA board, he inquired into purportedly improper financial activities by Defendants Alfortish and Mona Romero after Hurricane Katrina. Plaintiffs allege that in retaliation Defendants Alfortish and Mona Romero "rigged" the March 2008 election of the LHBPA board to remove Morrell from his position. Plaintiffs allege that the United States Postal Service has investigated whether the election was tainted by mail fraud, based on the allegations of an LHBPA employee that Defendants Mona and Gerald Romero, among others, cast fraudulent ballots. Plaintiffs allege that all other Defendants took no action regarding the allegations of fraud and failed to hold a meeting, despite being required to do so by LHBPA bylaws.

Second, Plaintiffs allege that certain defendants misused LHBPA funds in connection with post-Katrina construction contracts. Plaintiffs allege that Defendant Alfortish made unauthorized payments to Roughneck Construction to repair the LHBPA corporate office, using checks that were signed by only one authorized individual and not by two as required by the bylaws. Plaintiffs also allege that the board failed to obtain a written contract for those repairs or to maintain records of the work. Further, Plaintiffs allege that Roughneck Construction performed work on Defendant Alfortish's home, including installing a sound system.

---

[1]Plaintiffs indicate that one board member is not a named defendant in this matter.

Third, Plaintiffs allege that the LHBPA misused the proceeds of two lawsuit settlements held by the LHBPA on behalf of horse owners. Plaintiffs allege that the money in these settlement funds did not belong to the LHBPA, but that Defendants Alfortish and Mona Romero spent an unknown amount of those funds over a period of time, including using portions of those funds to make payments to Roughneck Construction. Plaintiffs allege that this conduct was brought to the attention of other board member Defendants, who took no action.

Fourth, Plaintiffs allege that Defendant Alfortish and others misused donated hurricane relief money. Plaintiffs allege that after Hurricanes Katrina and Rita, out-of-state horse racing associations donated more than $778,000 to the LHBPA with the intent that the funds be distributed to needy individuals in the Louisiana horse racing community. Plaintiffs allege that Alfortish and other Defendants transferred the funds to a charitable organization and disbursed those funds to others, including themselves and others not entitled to the funds, in breach of a fiduciary duty. Plaintiffs also allege that the funds were disbursed in disproportionate amounts to Defendants or close business associates, including $14,000 to Defendant Early, $10,206 to Defendant Bourgeois, $10,000 to Defendant David, and $2,500 to Defendant Mona Romero. Plaintiffs also allege that the Board failed to stop these disbursements, did not maintain proper records, did not make tax filings, and did not comply with requests for an accounting of these funds.

Plaintiffs filed suit in this court, alleging that these facts state a claim for civil violations of the RICO statute.[2] Plaintiffs allege that the use of the mails to rig the 2008 election constitutes mail fraud as a predicate act. Plaintiffs also allege that the misuse of funds and

---

[2]This is apparently the fifth lawsuit arising out of these general allegations.

breaches of fiduciary duties involved the use of the mail and the wire.  Plaintiffs also allege money laundering as a predicate act based on the alleged contracts with Roughneck Construction, the misuse of the hurricane donations, and alleged payments to attorneys.

## II.     PRESENT MOTIONS

Pending before the Court are six motions to dismiss, filed by all named Defendants, individually or in groups.  The Motions have been filed by: Defendants Keith Bourgeois, Sam David, and Larry Robideaux, Jr. (Rec. Doc. 52); Christine Early (Rec. Doc. 54); Evelyn Benoit, Carrol J. Castille, William R. Foreman, and Don Hargroder (Rec. Doc. 61); Sean Alfortish (Rec. Doc. 71); Mona Romero (Rec. Doc. 74); and Gerald Romero (Rec. Doc. 82).  Plaintiffs have filed a joint opposition.

The motions to dismiss raise many overlapping arguments.  Some or all of Defendants move to dismiss on grounds including res judicata, failure to plead with Rule 9(b) specificity, failure to allege specific elements of various RICO predicate acts or causes of action, and failure to identify each Defendant's specific involvement.  The Court need not reach these arguments because Plaintiffs lack standing to bring these claims.

## III.    LAW & ANALYSIS

### A.     Rule 12(b)(6) Standard

Motions to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6) are "viewed with disfavor and rarely granted." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)).  Federal Rule of Civil Procedure 8(a)(2) provides that a pleading stating a claim for relief must contain "a short and

plain statement of the claim showing that the pleader is entitled to relief." Once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). In considering a motion to dismiss under Rule 12(b)(6), the Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

However, a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, — U.S. —, —, 129 S.Ct. 1937, 1949 (2009). Therefore, to survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. The Court will not "strain to find inferences favorable to the plaintiffs" or "accept conclusory allegations, unwarranted deductions, or legal conclusions." *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 361 (5th Cir. 2004) (quotation omitted). "Because the civil RICO statute is an unusually potent weapon that entitles a prevailing plaintiff to treble damages, a RICO plaintiff must do more to defeat a motion to dismiss than simply to assert an inequity attributable to a defendant's conduct and tack on the self-serving conclusion that the conduct amounted to racketeering." *Fuller v. Harrah's Entertainment, Inc.*, 2004 WL 2452771, at *2 (E.D. La. Oct. 29, 2004) (citation and alterations omitted).

**B.     Standing**

A civil RICO plaintiff must clear two hurdles to demonstrate standing to sue. First, the

plaintiff must satisfy "all applicable standing requirements imposed in other pertinent federal and state laws." *Whalen v. Carter*, 954 F.2d 1087, 1091 (5th Cir. 1992). Then, the court must analyze whether the plaintiff has standing under 18 U.S.C. § 1964(c), which permits suit by "[a]ny person injured in his business or property by reason of a violation of section 1962" and is "the only standing requirement which the civil RICO statute *itself* imposes." *Ocean Energy II, Inc. v. Alexander & Alexander, Inc.*, 868 F.2d 740, 744 (5th Cir. 1989) (emphasis in original).

### i.     Derivative Standing

With respect to the first inquiry, Defendants argue that Plaintiffs, who are members of the LHBPA, a non-profit corporation, lack standing to assert what are essentially derivative claims for injuries incurred only by the LHBPA. The Fifth Circuit applies a three-prong test to determine whether shareholders of a corporation may assert a civil RICO claim for alleged injuries:

> Where ... RICO plaintiffs bring claims analogous to shareholder derivative claims, we apply a three-part test to determine whether the plaintiffs satisfy general standing requirements. ... We ask "(1) whether the racketeering activity was directed against the corporation; (2) whether the alleged injury to the shareholders merely derived from, and thus was not distinct from, the injury to the corporation; and (3) whether state law provides that the sole cause of action accrues in the corporation."

*Joffroin v. Tufaro*, 606 F.3d 235, 238 (5th Cir. 2010) (quoting *Whalen*, 954 F.2d at 1093).

In *Joffroin*, the RICO plaintiffs were members of a homeowners association who alleged that officers of the association breached their fiduciary duties and diverted association fees to their personal benefit. *Id.* at 236-37. The Fifth Circuit held that the members lacked standing to sue. The first *Whalen* prong was satisfied because the claims "were for monies diverted from [the association's] treasury and the plaintiffs did not allege that [defendants] 'committed any

fraudulent acts with the *direct* intent to injure' [plaintiffs]." *Id.* at 238 (quoting *Whalen*, 954 F.2d at 1092) (emphasis in original). The second *Whalen* prong was satisfied because the alleged injury to the members was based on the defendant's breach of fiduciary obligations owed to the association, and therefore the injury was "merely derived from, and was not distinct from, the injury to [the homeowner's association]." *Id.* Finally, the third prong was satisfied because the court found that under Louisiana law, the cause of action for breach of a fiduciary duty owed to a homeowners association accrued in the association, and not its members. *Id.* at 238-39.

Here, Defendants urge that the claims should be dismissed for lack of standing under the three-prong *Joffroin* and *Whalen* analysis. First, Defendants argue that the alleged bad acts consist of breaches of fiduciary duties owed to the LHBPA, and misuse of funds belonging to or held by the LHBPA, thus satisfying the first prong that "the racketeering activity was directed against the corporation." Defendants also argue that any injuries Plaintiffs have incurred as a result of the misuse of funds, such as alleged higher assessments or the risk that the LHBPA will be insolvent, are only derivative of the direct injury to the LHBPA, fulfilling the second prong that "the alleged injury to the shareholders merely derived from, and thus was not distinct from, the injury to the corporation."

With respect to the third prong, concerning who is entitled to bring a claim for damages to a non-profit corporation, Defendants do not cite any directly apposite Louisiana case law. However, the Louisiana Supreme Court has held that case law regarding business corporations is relevant to interpreting statutes governing non-profit corporations. *Mary v. Lupin Foundation*, 609 So. 2d 184, 187 (La. 1992). Shareholders in a business corporation lack standing to pursue claims for losses incurred by the corporation which are only indirectly passed to the shareholder.

*E.g., Sun Drilling Prods. Corp. v. Rayborn*, No. 00-1884, p. 17-18 (La. App. 4 Cir. 10/3/01); 798 So. 2d 1141, 1154 (citing La. Rev. Stat. § 12:91).  "If the breach of fiduciary duty causes a *direct* loss to the shareholder or causes damage affecting the shareholder *personally*, a shareholder may have the right to pursue a claim individually ... [but] where the alleged loss to the individual shareholder is the same loss that would be suffered by other shareholders, the loss is considered to be indirect."  *Id.* (emphasis added).

Plaintiffs argue in response that they have standing because the alleged rigged election was directed specifically against Plaintiff Morrell and injured him uniquely, thereby defeating the first and second *Whalen* prongs.  Plaintiff also asserts without citing authority that "plaintiffs have the same or equal rights as the corporation, LHBPA, to assert mail fraud allegations."  This seems to assume the point without proving it; if an act of fraud was directed against the LHBPA, then the remedy would belong to the LHBPA.

The *Joffroin/Whalen* standing analysis defeats Plaintiff Woodley's claims, but not Plaintiff Morrell's.  First, there are no allegations of any racketeering conduct directed specifically at Plaintiff Woodley.  Second, there are no allegations regarding any specific injury incurred by Plaintiff Woodley; rather, the complaint repeatedly emphasizes that it seeks damages "in such amount as will fully reimburse *the LHBPA*" and that "the entire membership of LHBPA are 'alleged victims.'"  Thus, Plaintiff Woodley does not have a cause of action against the Defendants under Louisiana law and he consequently lacks standing to assert a civil RICO claim.

However, Plaintiff Morrell sufficiently alleges standing under *Joffroin*.  Morrell alleges that the election-rigging scheme was directed at him, and injured him directly by robbing him of

his position on the Board.  This is a specific injury to Morrell himself, and not to the LHBPA, such that the first and second prongs of the *Joffroin* test are not met.  Thus, Morrell survives the first half of the civil RICO standing analysis.

### ii.      RICO standing

A civil RICO plaintiff must also establish standing under 18 U.S.C. § 1964(c), which permits suit by "[a]ny person injured in his business or property by reason of a violation of section 1962."  This is "the only standing requirement which the civil RICO statute *itself* imposes."  *Ocean Energy II*, 868 F.2d at 744.

A cognizable RICO injury must be to "business or property."  "Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient to confer RICO standing."  *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998).  To establish standing, a RICO plaintiff must plead more than "speculative damages" that "would not simply entail a calculation of present, actual damages."  *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995).  Also, injury to third parties will not provide civil RICO standing to plaintiffs who were not directly injured.  *See Holmes v. Sec. Investor Prot. Corp.*, 502 U.S. 258, 268-69 (1992).

Defendants argue that Morrell has failed to allege a requisite injury.  For much the same reasons discussed above, Defendants argue that direct injury to the LHBPA does not equate to an injury to Plaintiffs as a direct result of the alleged conduct; rather, the injuries are indirect and derivative.  Defendants also argue that the alleged loss of Plaintiff Morrell's seat on the board, and costs incurred in contesting that election, do not suffice as a cognizable RICO injury.  Defendants argue that the right to be re-elected was a mere "expectancy interest" because the position was unpaid and Morrell had no concrete right to be re-elected.  Defendants also argue

that there are no allegations that Morrell in fact paid the assessed election contest costs, and thus has not incurred any concrete, out-of-pocket expenses.

In response, Plaintiffs argue that the alleged wrongful diminution of the settlement funds, as well as damage to Morrell's "reputation as a public officer" and costs in bringing this litigation, suffice to show a cognizable RICO injury. Plaintiffs also articulate a claim for "unjust enrichment" that is not presented in the complaint.

Defendants have the better argument. With respect to the alleged misuse of the settlement funds, Morrell does not allege specifically that any of that settlement money belonged to him personally. The complaint alleges that the settlement fund contained monies intended to cover settlement checks which had yet to be cashed; Morrell does not allege that he had received or was entitled to any such check. Any injury arising from alleged misuse of those funds was incurred by someone other than Morrell.

With respect to damage to Morrell's "reputation as a public officer," the Fifth Circuit admits the possibility that damage to professional reputation may be a sufficient "injury to business or property." *See Khurana v. Innovative Health Care Sys., Inc.*, 130 F.3d 143, 150-51 (5th Cir. 1997), *vacated sub nom. Teel v. Khurana*, 525 U.S. 979 (1998). The plaintiff in *Khurana* was a doctor who alleged that "the defendants caused him injury by fraudulently inducing him to accept employment via mail and wire fraud, thereby damaging his reputation through association with their fraudulent activities." *Id.* at 150. The Fifth Circuit found that to be a sufficient allegation of an "injury to business or property." *Id.* Moreover, the Fifth Circuit held that proximate cause was adequately alleged "[d]amage to his professional reputation is easily seen as a natural outgrowth of such an employment association" because "the predicate

acts were pleaded as responsible for [plaintiff's] acceptance of his employment." *Id.* *Khurana* has not been widely followed on this point, and numerous other courts have held that damage to reputation is a personal injury that does not establish civil RICO standing. *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 954 (8th Cir. 1999); *see also Walker v. Gates*, No. 01-10904, 2002 WL 1065618, at *7 (C.D. Cal. May 28, 2002). This Court must follow *Khurana* as Fifth Circuit precedent, but Morrell's allegations do not pass muster. First, Morrell has not argued an injury to a business reputation, which might have some concrete out-of-pocket effect upon him, but rather injury to his "reputation as a *public* officer." No party disputes that service on the LHBPA board is unpaid, and one's reputation as a public figure is much more intangible than one's reputation regarding a paid career. Moreover, the only alleged predicate acts directed at Morrell, the purported electoral mail fraud, served to *dissociate* Morrell from the LHBPA. Thus, any assertion that he has been injured in his reputation by association with the LHBPA "by reason" of the alleged predicate acts is at best implausible. This is the sort of conclusory allegation that does not suffice to defeat a motion to dismiss.

With respect to costs Morrell incurred in disputing the allegedly fixed election or litigating this suit, those are at best "indirect injuries" which do not provide RICO standing. In *Strates Shows, Inc. v. Amusements of America, Inc.*, a plaintiff asserted civil RICO claims against defendants who allegedly rigged a contract bidding process. *See* 379 F. Supp. 2d 817, 820-23 (E.D.N.C. 2005). The plaintiff challenged the allegedly rigged contract award through an administrative process, and argued in a subsequent RICO suit that those administrative challenge costs were a cognizable civil RICO injury. *Id.* at 833. The court disagreed, ruling that the "plaintiff's choice to pursue a bid protest, however justified, was an 'independent cause'

11

which required the payment of legal fees and costs" and was not proximately caused by the defendants' alleged illegal conduct. *Id.* The same reasoning applies to Morrell's costs in challenging the allegedly rigged election and in prosecuting this case.

Accordingly, Plaintiff Morrell lacks standing under § 1964(c). Because dismissal of both Morrell's and Woodley's claims is warranted for lack of standing, the Court does not reach the numerous other pleading deficiencies identified by the Defendants.

## C.     Leave to Amend

As set forth above, Plaintiffs lack standing to bring these civil RICO claims. Plaintiffs have failed to allege or argue facts establishing standing in their complaint, in their RICO case statement, and in opposing this motion. Standing appears to be an insurmountable hurdle to this suit and cannot be cured by amending the complaint. Accordingly the Court will dismiss all claims with prejudice and without leave to amend the complaint. *See In re MasterCard Int'l Inc., Internet Gambling Litig.*, 132 F. Supp. 2d 468, 497 (E.D. La. 2001).

## III.    Conclusion

The Court's holding is narrow: these Plaintiffs lack standing to assert these civil RICO claims. The Court expresses no opinion about the propriety or legality of the Defendants' alleged conduct. Plaintiffs, some other party, or the LHBPA may have a remedy in a different forum, but civil RICO is not the proper vehicle to vindicate those rights under these circumstances.

For the reasons set forth above, Defendants' motions are GRANTED in their entirety and this case is DISMISSED with prejudice.

New Orleans, Louisiana, this 8th day of November, 2010.

_____
UNITED STATES DISTRICT JUDGE